CHICAGO AND NORTHWESTERN
TRANSPORTATION COMPANY, a
corporation, et al., Appellees,

v.

NEGUS–SWEENIE, INC., a
corporation, Appellant.

No. 76–1171.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1976.

Decided Jan. 26, 1977.

Rehearing Denied Feb. 24, 1977.

**48**

Ronald H. Stave, Omaha, Neb., argued and filed brief, for appellant.

Joseph K. Meusey, Omaha, Neb., argued and filed brief, for appellees.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and HENLEY, Circuit Judge.

GIBSON, Chief Judge.

In this diversity case, Negus-Sweenie, Inc. appeals from a judgment rendered by the District Court[1] in a bench trial ordering Negus-Sweenie to indemnify Horizon Construction Company (Horizon) the amount of $50,626.67 for damages arising out of a train derailment in Omaha, Nebraska.

In 1970, the State of Nebraska and Hawkins Construction Company (Hawkins) entered into a contract for the construction of Interstate Highway I-680 in Omaha. Hawkins subcontracted the gradework for the construction to Horizon. The Hawkins-Horizon subcontract contained an indemnity provision whereby Horizon agreed to indemnify Hawkins against damages arising out of the performance of the subcontract. Horizon then subcontracted with Negus-Sweenie to assist in the gradework at the I-680 construction site. The subcontract between Horizon and Negus-Sweenie embodied an indemnity provision in which Negus-Sweenie agreed .

> [t]o indemnify [Horizon] against any and all loss, damage, cost, expenses, and attorneys' fees suffered or incurred as a result of the performance of this Subcontract.

The performance of the gradework and earth-moving duties at the construction site required heavy equipment to traverse a railroad track owned by Chicago and Northwestern Railway Company (C. & N.W. Railway). Therefore, Hawkins and C. & N.W. Railway executed a "Contractor's Temporary Crossing License Agreement" which entitled Hawkins to construct a private roadway on the property of C. & N.W. Railway and to place a plank crossing where the railroad tracks and the road intersected. A flagman, designated as an employee of Hawkins, was to protect train and vehicular movements at the crossing. In the contract, Hawkins agreed to assume financial responsibility for property damage or personal injury arising out of the operation of the crossing, regardless of the Railway's negligence.

For a substantial period of time, the crossing was used exclusively by Negus-Sweenie for the purpose of removing earth from the construction site. Negus-Sweenie used heavy earth-moving machines, each weighing as much as 45 tons when loaded, in this process. These machines passed over the railroad crossing nearly 800 times per day. The heavy weight of the machines caused the rails at the crossing to vibrate and to "bow out" on occasion. Such bowing required repairs on the railroad tracks at least once and perhaps three times during the time Negus-Sweenie was using the crossing.

On May 27, 1971, a train passed over the crossing at 4:00 p.m. without mishap. At approximately 6:30 p.m., the flagman inspected and measured the rails and found that one of the rails was bowed one quarter of an inch, which was well within acceptable tolerances. At 9:30 p.m., a train owned by the Chicago and Northwestern Transportation Company (C. & N.W. Transport) was partially derailed at the crossing and suffered property damage.

C. & N.W. Transport instituted the present diversity action against Hawkins under the provisions of the license agreement to recover a monetary judgment for the damages incurred in the derailment.

---

1. The Honorable Richard E. Robinson, United States Senior District Judge for the District of Nebraska.

Hawkins filed a third-party complaint against Horizon contending that, if Hawkins were held financially liable for the derailment, Horizon must indemnify Hawkins under the subcontract between the two parties. In turn, Horizon impleaded Negus-Sweenie as a fourth-party defendant seeking indemnification, if necessary, under the terms of their subcontract. The District Court found that the derailment arose out of the operation of the crossing and that the damages were incurred as a result of the performance of the grading subcontracts. Accordingly, it ordered that Hawkins pay C. & N.W. Transport $50,626.67, that Horizon indemnify Hawkins for that amount and that Negus-Sweenie in turn indemnify Horizon. All obligations of the judgment have been satisfied except the indemnification of Horizon by Negus-Sweenie.

In the District Court, Negus-Sweenie sought to avoid liability on its contract of indemnity to Horizon on two grounds, (1) that under the doctrine of acquiescence, Hawkins and Horizon are barred from indemnity since Hawkins acquiesced in the continuance of a dangerous condition at the crossing, and (2) that Hawkins through its agent, the flagman, was negligent in failing to discover that the crossing rails were not in a serviceable condition immediately prior to the derailment; thus, Hawkins and Horizon were not entitled to indemnification. The District Court in a well-reasoned unreported memorandum opinion found that the derailment was due to the "lateral instability in the west rail of the crossing", which condition was caused by Negus-Sweenie's use of the crossing, that the flagman was not negligent, and that the doctrine of acquiescence had no application to the factual situation presented in this case. We are in complete agreement with the District Court's findings of fact and conclusions of law. We, therefore, affirm the judgment on the basis of Judge Robinson's well-articulated opinion.

On appeal Negus-Sweenie raises an issue not considered by the District Court. It contends that C. & N.W. Transport is not entitled to maintain this action against Hawkins under the "Contractor's Temporary Crossing License Agreement." The license agreement was executed not by C. & N.W. Transport, but by C. & N.W. Railway. It is argued that only C. & N.W. Railway secured rights under the agreement and that C. & N.W. Transport possessed no right to pursue the cause of action for the alleged breach of the license agreement. The essence of Negus-Sweenie's argument, as we perceive it, is whether C. & N.W. Transport is the "real party in interest" in this action. Fed.R.Civ.P. 17(a) specifies that "[e]very action shall be prosecuted in the name of the real party in interest."

> The meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation. (Footnote omitted.)

*Virginia Electric & Power Co. v. Westinghouse Electric Corp.,* 485 F.2d 78, 83 (4th Cir. 1973), *cert. denied,* 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). The derailment in this case created an enforceable cause of action based upon the provisions of the license agreement. The question is whether C. & N.W. Transport had the right to file and maintain that cause of action.

Since this issue was not raised at any point in the trial proceedings, evidence relating to this subject is sparse. Representations have been made on appeal, and there is some evidence in the record to support these assertions, that C. & N.W. Railway sold its assets and other interests to C. & N.W. Transport in June, 1972. Under these circumstances, it appears that C. & N.W. Transport, as the successor corporation, has succeeded to all rights under the license agreement and is entitled to maintain this action as the real party in interest. However, the failure to raise this issue at trial precluded the taking of evidence on the issue and did not afford the District Court an opportunity to make a ruling on C. & N.W. Transport's right to maintain this action.

Obviously, this matter could have been easily disposed of in the trial proceedings. If an objection to plaintiff's right to institute an action is sustained by the trial judge, Rule 17 allows the joinder or substitution of the real party in interest in the action to avoid forfeiture or injustice. 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1555 (1971). If the defendant remains silent during the trial proceedings and raises the issue for the first time on appeal, the trial court is of course powerless to correct any error in this regard and the matter can not be quickly and easily resolved at the appellate level. Therefore, a real party in interest objection should be raised with "reasonable promptness" in the trial court proceedings. 6 C. Wright & A. Miller, *Federal Practice and Procedure, supra* § 1554, at 701. If not raised in a timely or seasonable fashion, the general rule is that the objection is deemed waived. *Yorkshire Insurance Co. v. United States,* 171 F.2d 374, 376 (3d Cir. 1948), *aff'd on other grounds sub nom., United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *Pace v. General Electric Co.,* 55 F.R.D. 215, 217 (W.D. Pa.1972); *see Rosenblum v. Dingfelder,* 111 F.2d 406, 407–08 (2d Cir. 1940); 3A J. Moore, *Federal Practice* ¶ 17.15–1, at 604 (2d ed. 1974); 6 C. Wright & A. Miller, *Federal Practice and Procedure, supra* § 1554, at 701.

We hold that, under the facts of the present case, Negus-Sweenie has waived its contention that C. & N.W. Transport is not the real party in interest by not raising this issue in the trial court proceedings. There has been no showing that Negus-Sweenie was prejudiced by the maintenance of the action by C. & N.W. Transport rather than C. & N.W. Railway. As C. & N.W. Transport appears to be the successor corporation of C. & N.W. Railway, the nature of Negus-Sweenie's objection goes to form, not substance. *See Hyatt Chalet Motels, Inc. v. Salem Building & Construction Trades Council,* 298 F.Supp. 699, 703–04 (D.Or. 1968). In any event, a timely objection by Negus-Sweenie of the plaintiff's status would have resolved this issue without prejudice to any of the parties. Finally, there is no indication in the record that diversity of citizenship would be lacking if the action had been instituted by C. & N.W. Railway rather than C. & N.W. Transport. To reverse this judgment on the basis of this belated argument would not be in accordance with existing rules of law or principles of justice and judicial economy. Accordingly, we conclude that Negus-Sweenie has waived this issue.

Judgment affirmed.