Charles AINI, et al., Plaintiffs,

v.

SUN TAIYANG CO., LTD., et al., Defendants.

No. 96 Civ. 7763(LAK).

United States District Court, S.D. New York.

Sept. 30, 1997.

Peter L. Berger, Levison, Lerner, Berger & Langsam, Ellenville, NY, Martin R. Friedman, O'Rourke & Friedman, Brooklyn, NY, for plaintiffs.

Bernardo Burstein, Akerman, Senterfitt & Edison, P.A., Miami, FL, Harry Frischer, Solomon, Fricher & Sharp, New York City, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

These actions involve, among other things, conflicting claims of ownership and infringement of the trademark TOPICLEAR as applied to certain cosmetic products as well as a claim by the defendants for goods sold and delivered. All issues save for damages for alleged trademark infringement were tried in December 1996 and resolved in May 1997 in *Aini v. Sun Taiyang Co.*, 964 F.Supp. 762 (S.D.N.Y.1997) (*"Aini I"*). An interlocutory judgment, which among other things awarded to defendant Laboratoire REC ("REC") and against plaintiff Jacob Aini the sum of $553,995.26 in respect of goods sold and delivered and interest, was entered in July 1997. The Court then tried the surviving trademark infringement damage claim of plaintiff Topiclear Beauty Products, Inc. ("TBPI"), which was determined in *Aini v. Sun Taiyang Co.*, No. 96 Civ. 7763(LAK), 1997 WL 576027 (S.D.N.Y. Sept.15, 1997) (*"Aini II"*). Final judgment now has been entered disposing of this and a related action, No. 96 Civ. 9318.

On September 3, 1997, Jacob Aini moved, *inter alia*, to vacate the portion of the interlocutory judgment which determined that he was indebted to REC for $553,995.26. All other parts of the motion have been withdrawn or rendered moot. Accordingly, only this aspect of Aini's motion remains.

### Aini's Contentions

Aini's contentions of course are best understood against the background of the Court's opinions in *Aini I* and *Aini II*, familiarity with which is assumed. They are as follows:

1. The debt on which REC sued and sought relief actually was owed, if it was owed at all, by a corporation known as RNM, which was not a party to the action. REC's claim for goods sold and delivered therefore was beyond the scope of the litigation.

2. The Court improperly pierced the corporate veil to hold Jacob Aini liable for RNM's debt.

3. The Court erred in computing damages in that (a) it improperly relied upon documents not in evidence, (b) the invoices upon which the damage determination was made improperly reflected overcharges by REC for the goods in question, and (c) the debt claimed actually had been paid.

4. Although REC was named by plaintiffs as a defendant in this case and brought the counterclaim that resulted in the judgment against Aini, there is no evidence that it was authorized to sue or that its counsel in this action was authorized to act on its behalf.

The most meritorious of these assertions is frivolous.

### Discussion
#### Aini's Personal Liability for the Debt

■ Aini's first two points boil down to the contention that the contracts for the sale of goods that gave rise to the debt upon which REC sued were not his personal obligations. He bases the argument on the assumption that the debt was owed by a corporation

called RNM and that the Court erroneously pierced the corporate veil to impose liability upon him.

Aini's argument comes much too late. As *Aini I* makes clear, the evidence at trial did not establish that RNM was a corporation, and Aini did not dispute that he was personally liable for any debt owed under the name RNM, whatever it was.[1] There is no reason why the argument now presented could not have been made earlier. In consequence, even if the motion were considered under Rule 54(b) rather than Rule 60(b),[2] Aini's lack of diligence in presenting it would be fatal to his position.[3] In the interests of justice, however, the Court has considered the merits of Aini's newly asserted contention and concluded that it is without merit. In order to place the issue in context, it is essential to understand the course of the litigation regarding REC's claim for goods sold and delivered.

The twelfth claim for relief in the counterclaim asserted on behalf of REC, among others, alleged that REC supplied over $2 million worth of goods to Jacob Aini, that Aini promised payment, and that Aini personally owed it more than $ 1 million.[4] Aini never filed a reply and thus admitted the factual allegations of the twelfth claim for relief, including the allegation that he personally purchased the goods and owed REC for them.[5] The same allegation was repeated by REC in its contentions in the joint pretrial order, which specifically sought judgment for goods sold and delivered.[6] Aini's contentions in the pretrial order did not dispute REC's claim.[7] Thus, the case went to trial on the basis that Aini's personal liability to REC was admitted and the only issue was the amount of the debt, if any.

During the trial, Aini's testimony never directly addressed his alleged personal liability for goods sold and delivered although he on several occasions acknowledged, speaking in the first person without any explicit reference to his companies, that he had ordered goods from REC and affiliates and taken other steps to advance the business.[8] While the testimony arguably is subject to the interpretation that Aini was referring to his companies rather than to himself when he spoke in the first person, it is susceptible also of the construction that he was referring to himself alone.

The proof offered by REC of the amount of Aini's liability consisted of deposition testimony of George Guterman's and two worksheets that he prepared.[9] Guterman testified that DX XE was a tabulation showing the amount owed by "RNM Corporation" to REC, which was 2,351,713 *f*.[10] Although RNM was not a party to the action, Aini did not contest the relevancy of Guterman's testimony. Indeed, his only objections to Exhibits XE and XF, the source of Guterman's conclusion as to the amount owed, were that Guterman's deposition had been short, the documents were in French and thus hard for

---

1. *Aini I*, 964 F.Supp. at 781 & n. 28.

2. When Aini filed this motion, the liability he sought to avoid was set forth in the interlocutory judgment, entered July 7, 1997. The motion therefore properly was brought under Rule 54(b), which imposes a standard upon the movant that is less demanding than Rule 60(b) applies to efforts to obtain relief from final judgments. *Aini v. Sun Taiyang Co.*, Nos. 96 Civ. 7763 & 9318(LAK), 1997 WL 525380, at *3 (S.D.N.Y. Aug.22, 1997) ("*Aini III*"). Although a final judgment has been entered since the motion was filed, the Court first considers this application under Rule 54(b). If Aini is not entitled to relief under that standard, *a fortiori* he would be entitled to no relief under Rule 60(b), thus making it unnecessary to decide whether the entry of final judgment after the filing of the motion rendered Rule 60(b) applicable.

3. *Aini III*, at *3.

4. Ans. and Counterclaims, ¶¶ 71–76.

5. Fed.R.Civ P. 8(d).

6. Joint pretrial order, at 18, 78.

7. *Id.* at 3–11.

8. *E.g.*, Tr. 52 ("I was having [TOPICLEAR products] produced for *me*."). 53 (product "imported *for me upon my orders* ..."), 54 ("Q You were buying from REC in 1991, is that correct? A *I was buying from them? Yes* ..."), 149 ("*I* started buying them approximately 1991.") (emphasis added).

9. DX YF, DX XE, DX XF.

10. DX YF, at 13–17.

Aini's counsel to understand, and that Guterman lacked personal knowledge of the course of dealings between the parties.[11] Moreover, once the Court received the exhibits, Aini's only response was to press for the receipt in evidence of a number of checks which, he claimed, showed that at least part of the amount claimed had been paid.[12] Aini, however, never disputed that he was personally responsible to the extent the debt remained outstanding. It was in that context that the Court held Aini personally liable and observed in *dictum* that RNM, even if it was a corporation, was Aini's *alter ego*.[13]

Had Aini raised the issue at trial the Court would have rejected his position for several reasons. First, Aini's failure to file a responsive pleading denying the counterclaim's allegation that he was the buyer of the goods admitted that assertion.[14] His failure to dispute the point in the pretrial order confirmed REC's right to regard that potential issue as having been removed from the area of dispute. While the Court would have had the power under Rule 6(b) to extend Aini's time to file a reply "for good cause shown" and to modify the pretrial order "to prevent manifest injustice,"[15] Aini even now has not shown good cause for his failure to file a reply and certainly has not shown that modification of the pretrial order was necessary to prevent manifest injustice. Indeed, it is quite clear that REC would have been severely prejudiced had the issue of Aini's personal liability suddenly been placed in dispute at trial, as REC would have been deprived of the opportunity to conduct discovery as to whether RNM in fact was a corporate entity and as to all of the elements relevant to piercing the corporate veil. Hence, the Court would not have relieved Aini of the consequences of his actions with respect to the reply and the pretrial order.

Second, although Aini now claims that RNM, the ostensible obligor on the debt, was a corporation when the debt was contracted, no such proof was offered at trial.[16] To the contrary, when Aini was asked whether he received goods through RNM, he responded as follows:

"Through RNM [*sic*]? No. RNM [*sic*] never had a checkbook account. We wanted to produce it. It was a company that was originally formed with my brother-in-law and we never—we stopped it. *We never made it a full-fledged company.*"[17]

Moreover, it was clear from the testimony of Mr. Jedouane that REC dealt with Aini and that "RNM" was simply a name that Aini gave him, as he gave him many others, as a shipping and invoice designation for the purpose of avoiding taxes and, perhaps, regulatory requirements.[18] The Court therefore concluded, and in any case now finds, that there was no persuasive evidence that RNM was a corporate entity at any point relevant to the claim for goods sold and delivered[19]

11. Tr. 456–57.

12. *Id.* at 457–60. The checks, it must be noted, were not drawn by RNM.

13. *Aini I,* 964 F.Supp. at 781.

14. Fed R.Civ P. 8(d).

15. Fed.R.Civ.P. 16(e).

16. The fact that Guterman's worksheets designated RNM as "RNM Corporation" was not hardly persuasive evidence in view of Guterman's obvious lack of personal knowledge as to the facts pertinent to RNM's existence and structure.

17. Tr. 56 (emphasis added).

18. Jedouane testified:

"Q. If Mr. Aini ask [*sic*] you to send the merchandise and send invoices to different companies? A. Yes. He asked me to send it to several other companies, each time he gave me an address and a name." (Tr. 376)
"Q. Did Mr. Aini ever tell you why he was using different companies? A. Yes. Q. What did he say? A. To not pay too much tax. He's going to close the companies. He will open others, and not to pay for the lawsuit with the FDA, an agency of the state that regulates consumption. It's something like FDA. I don't know." (*Id.* 377)

19. Indeed, the only evidence proffered on this motion is a Statement of Addresses and Directors issued by the New York. Department of State regarding an entity named R.N.M. Discount Store, Inc. The Court declines to consider the statement because it could have been, but was not offered at trial and no excuse whatever has been advanced for Aini's failure to do so. *See Aini III,* at *3. Even if the Court considered the statement, it would not give it any material weight in view of (i) the discrepancy between the

and that the RNM name was used by Aini for purposes of tax avoidance and by REC as an accommodation to Aini and for its own record keeping convenience given the fact that it was shipping to "RNM" per Aini's direction.

Third, even if the RNM referred to in Guterman's testimony was a corporate entity, the Court nevertheless would hold Aini personally liable. It certainly is true, as Aini now argues. that the separate existence of a New York corporation is not easily disregarded.[20] But to put the argument in terms of whether the corporate veil of any RNM corporation should be pierced, on reflection, is to mischaracterize the issue.

■■■ An individual who is a controlling shareholder may cause the corporation to do business that ultimately redounds to the shareholder's benefit. Where that occurs, the shareholder is entitled to the protection of the corporation's separate existence absent satisfaction of the piercing requirements. But such a shareholder also may conduct business him or herself, including business that redounds to the benefit of the corporation. Where that occurs, the shareholder is personally liable for the shareholder's actions.[21]

In this case, the evidence as to what Aini was doing when he ordered goods from REC is susceptible of either interpretation. Some evidence—most notably the fact that REC's books appear to have reflected part of REC's account receivable from Aini's interests under the RNM name—points in Aini's favor because it provides at least a suggestion that REC was looking for payment to RNM, whatever it was, rather than to Aini. Other evidence, however, points in the opposite direction. Aini used and dropped company names as if upon whim, at least in the case of "RNM Corporation" apparently without ever actually forming the corporate entity. The parties had an established course of dealing in which Aini ordered goods and later supplied names to be invoiced and used on shipping documents, which is at least consistent with a view that REC was relying on Aini's credit, not the credit of these names. Moreover, Aini's explanation to Jedouane that he used the various names essentially for tax avoidance permits the conclusion that Jedouane reasonably expected that Aini's use of the names would not affect REC's ability to collect for the goods.

Having considered all of the evidence on the point, this Court finds that Aini's purchases from REC were made by him in his individual capacity, that REC was entitled to and did rely on Aini's personal credit in supplying the goods to him on open account, and that the obligation to pay for the goods is Aini's.

*The Computation of Damages*

Each of Aini's assertions regarding supposed errors in the computation of damages is flatly wrong.

First, Aini argues that the Court relied upon DX XE and XF although, he contends, they were not received in evidence.[22] In fact, the documents were received in evidence.[23] In any case, Guterman testified to the amount owed, and his deposition was received without objection. The Court's determination therefore is supported independent of DX XE and DX XF.

Second, Aini claims that the amount that Guterman testified was owed was mistaken because Guterman assumed that REC was entitled to $1 per tube of TOPICLEAR

---

name used by the parties—RNM Corporation— and the name on the certificate and (ii) Aini's trial testimony that the RNM that he referred to never became a full fledged company. The Court is not persuaded that R.N.M. Discount Store, Inc., assuming that it existed at the relevant times, contracted with REC.

**20.** *See, e.g., Freeman v. Complex Computing Co.,* 119 F.3d 1044 (2d Cir.1997).

**21.** "When a stockholder ... make[s] a contract it is not the contract of the corporation: it does not bind the corporation or accrue to it, even where entered into by the owners of a majority of the stock, unless it is made for the corporation that subsequently adopts or ratifies it, or unless, in some cases, a contract among all stockholders is treated as if made by the corporation, so far as they are concerned." 1 CHARLES R.P. KEATING & GAIL O'GRADNEY, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 29, AT 544 (1990).

**22.** Aini Mem. 11.

**23.** Tr. 455–57.

whereas Aini asserts that the price should have been only 60 cents.[24] This argument was not made at trial and no justification has been offered for belatedly raising it now. The Court therefore declines to consider it. In any case, however, the argument is without merit. To begin with, the 1992 Agreement (described in of *Aini I*) demonstrates that the agreed price was $ 1 per tube.[25] Second, there is not a shred of evidence— either in the trial record or on this motion— that there ever was any overcharge.

*The Claim of Payment*

Aini now contends that a stack of checks received in evidence at trial were payments for goods sold and delivered, the prices for which are included in the sum that Guterman testified still was outstanding.[26] He therefore argues that the Court mistakenly rejected his payment defense.

As REC's memorandum points out, the total of the checks upon which Aini relies is far less than the total amount of goods sold by REC to Aini during the relevant period. In consequence, even assuming that the checks all were payments on the open account, the balance due on that account would far exceed the amount of the judgment against Aini.[27]

*Authority to Sue*

█ The last point made by Aini is that the Court should not have entered judgment in favor of REC because "REC was involved in a bankruptcy proceeding" in France from August 1993 through August 1995, there is no evidence that the individuals who have acted for it in this litigation were authorized to do so, and "it is likely that the Commissioner of Accounts appointed by the French Bankruptcy Court is not even aware of the existence of these proceedings ..."[28]

The only remotely relevant evidence tendered is a letter from a French attorney which notes that REC was ordered reorganized in 1993 by the Court of Commerce of Paris, that a court-appointed trustee submitted a report proposing a continuation plan, that the continuation plan was authorized in August 1995, and that the manager of REC was directed in December 1995 to provide certain documents to the Paris court.[29] No evidence is provided as to whether the French proceedings have been concluded[30] or as to the right of the company and its officers to conduct corporate business during the pendency of such a proceeding.

Whatever Aini's position is now, it is a position that he never took prior to the entry of judgment against him. There is no showing that he could not have raised the point previously. Even if the application is considered under Rule 54(b), this alone would warrant rejection of Aini's contention. But even if the Court were to consider the matter as having been raised prior to the entry on July 7, 1997 of the interlocutory judgment, it would reject Aini's position.

Rule 8(c) of the Federal Rules of Civil Procedure requires that a party against whom a claim is asserted "set forth affirmatively" a variety of enumerated defenses "and any other matter constituting an avoidance or affirmative defense." Rule 9(a) provides that "[w]hen a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

As nearly as the Court can determine, Aini now is suggesting either that REC lacks the

---

24. Aini Mem. 11.

25. PX 7, at 6. The fact that REC, in some circumstances, could have been obligated to pay TBPI a royalty of 40 cents per tube—thus making its net revenue 60 cents per tube—has no bearing on the price that REC was entitled to charge to the purchaser.

26. Aini Mem. 12.

27. REC Mem. 9–12. This would be true even if Aini's claim of an overcharge were accepted.

28. Aini Mem. 13.

29. Aini Reply Mem. Ex. 1, letter of Eric Catry to Todd Sharin, dated Sept. 2, 1997.

30. Aini's memorandum, however, asserts that they ended in 1995.

capacity to sue, that its bringing of the claim against Aini was not duly authorized, that a French trustee (if there is one) is the real party in interest, or all three. None of these defenses was pleaded, asserted in the pre-trial order, or raised prior to the entry of judgment. In consequence, to whatever extent these contentions might have been defenses had they been timely asserted, Aini's failure to file a reply or otherwise to assert them in a timely fashion waived them.[31] Even if it did not, Aini has failed to provide any factual support for his assertions.

### Conclusion

For the foregoing reasons, Jacob Aini's motion to vacate so much of the interlocutory judgment as awarded money damages in favor of Laboratoire REC and against him, which is treated as applying also to the final judgment entered earlier this month, is denied in all respects. This case is closed.

SO ORDERED.

**31.** *See, e.g., Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1431 (3d Cir.1994) (real party in interest objection waived by failure to raise prior to trial); *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.,* 929 F.2d 343, 346 (7th Cir.1991) (failure to plead objection to capacity is waiver); *Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102 (5th Cir.), *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990) (real party in interest objection waived by failure to raise prior to trial); *Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir.1982) (real party in interest objection waived unless pleaded as affirmative defense);

*Chicago & Northwestern Transp. Co. v. Negus–Sweenie, Inc.,* 549 F.2d 47, 50 (7th Cir.1988) (same); *Blau v. Lamb,* 314 F.2d 618, 620 (2d Cir.), *cert. denied,* 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed.2d 49 (1963) (same); *Fox v. McGrath,* 152 F.2d 616, 618 (2d Cir.1945), *cert. denied,* 327 U.S. 806, 66 S.Ct. 966, 90 L.Ed. 1030 (1946) (real party in interest defense freely waivable); 5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL 2D §§ 1294–95 (failure specifically to deny capacity to sue is waiver); 6A *id.* § 1554 (failure to raise real party in interest objection is waiver)