SCOTT GRAHAM HARTMAN,           )
KAY HARTMAN, His Mother and     )
Duly Qualified Conservator and  )
Guardian, and CLEON HARTMAN,    )
                                )
        Plaintiffs/Appellants,  )
                                )       Appeal No.
v.                              )       M1999-02730-COA-R3-CV
                                )
THE UNIVERSITY OF TENNESSEE     )       Tennessee Claims Commission
and STATE OF TENNESSEE,         )       No. 85,209
                                )
        Defendants/Appellees.   )

FILED

March 16, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

# COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE TENNESSEE CLAIMS COMMISSION

## AT NASHVILLE, TENNESSEE

### THE HONORABLE W. R. BAKER, COMMISSIONER

PAUL S. DAVIDSON
JOEL T. GALANTER
Stokes & Bartholomew
424 Church Street, Suite 2800
Nashville, Tennessee 37219-2386
        ATTORNEYS FOR PLAINTIFFS/APPELLANTS


BEAUCHAMP E. BROGAN
RONALD C. LEADBETTER
719 Andy Holt Tower
Knoxville, Tennessee 37996-0170
        ATTORNEYS FOR DEFENDANTS/APPELLEES

REVERSED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

For the second time, the claimants appeal a decision of the Tennessee Claims Commission denying them recovery from the University of Tennessee and the State of Tennessee of $1,026,666 in medical expenses allegedly paid by BellSouth Corporation under an ERISA plan with BellSouth alleged to be subrogee of such payments.

The claimant Scott Hartman is the son of the claimants Kay Hartman and Cleon Hartman. On April 17, 1987, Scott Hartman was permanently and catastrophically injured while participating in a track meet under a student athlete scholarship at the University of Tennessee in Knoxville. The claimants filed in their own name a broad-based claim in both contract and tort against the University of Tennessee and the State of Tennessee which was decided by the Claims Commission in March of 1998. All issues were resolved except the alleged subrogation claim for BellSouth in the amount of $1,026,666. In this respect, the Claims Commission held in part:

> [W]hile the BellSouth plan may have a claim against the University or the State based on a theory of subrogation, insuperable barriers exists to this Commission's consideration of such a claim. (a) Neither in the original pleadings instituting this claim, nor in the subsequent pleadings and filings, have the parties claimed, asserted, discussed, or raised the issue of subrogation, except for a mention of the plan's potential subrogation rights in the form of an order the claimants submitted in connection with the motion now under consideration. Thus, the subrogation issue properly is not before this Commission. (b) This Commission's procedures require both that proceedings be brought by the real parties in interest, and that all necessary parties be joined in the proceedings if possible. The BellSouth plan is the real party in interest, and a necessary party in any action for subrogation, and the plan is not a party to this proceedings. (c) This Commission lacks jurisdiction to consider and decide a claim of a party not properly before it, where there is no evidence about whether that party has even asserted the claim against the State or the University. Tennessee Code Annotated section 9-8-307. In short: the claim for subrogation belongs to the BellSouth plan and not to the claimants, and the plan is not a party to this claim.

2

On appeal, this court affirmed the judgment of the Claims Commission holding that nothing appeared in the record to indicate anything about a subrogation claim and making the following observation: "In the present case, the volunteer subrogors are seeking to recover in their own names funds which may or may not be justly due a third party which is not a participant in this proceeding and the basis of whose rights is not in this record." *Hartman v. University of Tennessee,* No. 01A01-9804-BC-00196, 1998 WL 639121 at * 3 (Tenn. Ct. App. Sept. 14, 1998). The Court then observed that "the way is open for the third party subrogee to assert its rights, if any, in a separate claim to the Claims Commission." *Id.*

In disposing of a petition to rehear filed by the claimants this Court held as follows: "The whole difficulty could have been avoided if the Hartmans had simply stated in their claim that it was presented on behalf of named subrogees, or had amended their claim to include such a statement. They did not do so, and the record on appeal fails to show that they ever paid any expense. Therefore, they are not entitled to recover anything in this proceeding for their own benefit, and they have not legitimately pursued the path that would entitle them to recover for the benefit of anyone else." *Hartman v. University of Tennessee*, No. 01A01-9804-BC-00196, 1998 WL 702057 (Tenn. Ct. App. Oct. 9, 1998).

The Supreme Court of Tennessee denied an application for permission to appeal in March 1999. The case was remanded back to the Claims Commission, and on March 10, 1999, the claimants filed a "Notice of Joinder of BellSouth Corporation" and "BellSouth's Corporation's Ratification of Claims." On March 25, 1999, the defendants filed a motion to strike the claimants' March 10, 1999 pleadings. This motion was sustained by the Claims Commission on May 10, 1999 wherein the Commission held:

> The proposed joinder of BellSouth comes too late. Proposing such a joinder almost twelve years after this claim was filed, three years after the State raised the real-party-interest issue, practically a year after this Commission's judgment, and also after consideration by both the Court of Appeals and the Supreme Court – such a joinder simply is not timely.

3

. . .

> Finally, BellSouth's position must be rejected on sound judicial-policy grounds. To let BellSouth enter this claim after the action taken by the Court of Appeals and the Supreme Court would mock finality of judicial decisions, and would invite a waste of appellate courts' time and resources.

> BellSouth has just waited too long.

From this judgment of the Claims Commission, BellSouth Corporation now appeals.

This entire controversy centers around Rule 17.01 of the Tennessee Rules of Civil Procedure and a singular substantive difference therein from its federal counterpart, Rule 17(a) of the Federal Rules of Civil Procedure. Rule 17(a) of the Federal Rules of Civil Procedure provides:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The singular substantive difference between Federal Rule 17(a) and Tennessee Rule 17.01 appears in the opening sentence of the Tennessee Rule: "Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, bailee, trustee of an express trust, a party to whose rights another is subrogated, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought ...." (emphasis added).

4

A substantial body of federal law construes Rule 17(a), Fed. R. Civ. P. Particularly important to the problem in this case are the *res judicata* safeguards in complete or partial subrogation cases manifested by federal court interpretation of Rule 17(a). Beginning with *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366 (U.S. 1949), both the subrogor and the subrogee are real parties in interest and necessary parties to the suit.

In *Prosperity Realty, Inc. v. Haco-Canon*, 724 F.Supp. 254 (S.D.N.Y. 1989), suit was brought in the name of the subrogor Prosperity Realty, Inc. The defendant insisted that Fireman's Fund Insurance Company, subrogee of Prosperity, was the real party in interest to the action and should be substituted as plaintiff. Fireman's Fund had submitted an affidavit of ratification from Fireman's Fund, ratifying "this action in the name of Prosperity pursuant to Rule 17(a), that Fireman's Fund agrees to be bound by the results of this action, and waives any right to pursue its subrogation rights outside of this proceeding." *Id. at* 258. In denying the defendant's motion, the court emphasized that a non-party subrogee, while not necessarily being named as a party, must take such action in the case as to bind itself in *res judicata* effect. Said the court:

> [The defendant] asserts that Prosperity's $1,000 interest in the litigation is not sufficient for it to be the real party in interest. This Court need not reach that issue, however, because of Fireman's Fund's ratification. The effect of service of a Rule 17(a) ratification agreement is the same as if the insurer had been a party from the beginning of the action. The purpose of Rule 17(a) is to protect the defendant from subsequent actions by the party actually entitled to recover, and to ensure that the judgment will be given its proper *res judicata* effect. Notes of Advisory Committee on Rules, 1966 Amendment to Rule 17(a). The ratification by Fireman's Fund submitted by Prosperity accomplishes that purpose, and it is therefore unnecessary to substitute Fireman's Fund as the plaintiff in this action.
>
> [The defendant] also argues that Fireman's Fund is controlling the litigation on Prosperity's behalf and should therefore be the named plaintiff. That argument is not persuasive. "As a practical matter, … the insurance company will control the prosecution no matter in whose name it is brought." C. Wright & A. Miller, *Federal Practice and Procedure* § 1546 at 656. Therefore, substitution of Fireman's Fund is inappropriate here.

*Prosperity Realty,* 724 F.Supp. at 258 (citations omitted).

In *Patterson Enterprises, Inc. v. Bridgestone/Firestone, Inc.*, 812 F.Supp. 1152 (D. Kan. 1993), the defendant argued that Patterson Enterprises was subrogor and Great West Casualty Company was subrogee and that Patterson's claim should be dismissed unless the complaint was amended to add Great West Casualty Company as a party. The court declined to require Great West to be made a party but used the ratification mechanism of Rule 17(a), Fed. R. Civ. P., the same mechanism provided by Rule 17.01, Tenn. R. Civ. P., to bind Great West to *res judicata* effect.

> The defendant will not be prejudiced if Mr. Patterson is allowed to pursue his claims without Great West being added as a party so long as Great West is bound by the results of the litigation and Great West allows Firestone adequate access to discoverable materials and information.
>
> Rule 17(a) provides a mechanism whereby a real party in interest may ratify another party bringing the suit and agree to be bound by the results of the litigation. This mechanism of ratification "is principally applied where an insurance company has paid all or a portion of a claim and becomes subrogated to its insured's right of recovery", such as here. "A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result."
>
> Mr. Patterson has given this court notice that Great West has already ratified the commencement of the lawsuit. However, Mr. Patterson's notice to the court could not have a legally binding effect on Great West. Therefore, if Great West wishes to ratify the commencement of this lawsuit, it shall file with the court an acknowledgment of ratification no later than February 19, 1993, which shall meet the following requirements set out by this order: The acknowledgment shall (1) be executed in a manner which shall make it legally binding on Great West, (2) ratify the commencement of this action, (3) authorize continuation of this action, (4) refer to this action particularly rather than provide a general authorization for litigation, (5) bind Great West to comply with any of the defendant's discovery requests and with any of this court's orders to the same extent as if it were a named party to this action and (6) agree to be bound by the results of this action. If Great West fails to so ratify this action, the court will entertain a motion to reconsider Firestone's joinder demand.

*Patterson Enterprises*, 812 F.Supp. at 1155-56 (citations omitted); *see also Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir. 1992); *Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472 (11th Cir. 1991); *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Management*, 620 F.2d 1 (1st Cir. 1980); *Naghiu v. Inter-Continental Hotels Group, Inc.*, 165 F.R.D. 413 (D. Del. 1996).

So it is under federal practice that a subrogee insurance company does not have to be joined as a party-plaintiff in a lawsuit against a third party if the record shows an affirmative ratification by the subrogee of the acts of the subrogor in the litigation so as to bind the subrogee to the outcome of the case on *res judicata* principles.

As we have observed Tennessee Rule 17.01 is slightly different from Federal Rule 17(a). This difference is the addition in the Tennessee Rule allowing "a party to whose rights another is subrogated" to sue in his own name without joining the subrogee. The trouble with the position of BellSouth Corporation throughout this litigation is that no where in the pleadings prior to the March 10, 1999 filing of the "Claimant's Notice of Joinder of BellSouth Corporation" and the simultaneous filing of "BellSouth Corporation's Ratification of Claims" is any mention made of BellSouth Corporation, of subrogation, or of the fact that the claimants Hartman are in any way parties "to whose rights another is subrogated." In vain, one may search the record in the prior appeal and the briefs filed on behalf of the Hartman claimants for a viable reason for the failure to plead the Rule 17.01 mandated prerequisite for the exception to the requirement that "every action shall be prosecuted in the name of the real party in interest."

As this court previously observed in its October 9, 1998 ruling on the petition to rehear the previous appeal, "the whole difficulty could have been avoided if the Hartmans had simply stated in their claim that it was presented on behalf of named subrogees, or had amended their claim to include such a statement. They did not do so, and the record on appeal fails to show that they ever paid any expense. Therefore, they are not entitled to recover anything in this proceeding for their own benefit, and they have not legitimately pursued the

path that would entitle them to recover for the benefit of any one else."

In spite of the difference in wording between Federal Rule 17(a) and Tennessee Rule 17.01, the need to bind the subrogee under *res judicata* principles is the same, and no reason is apparent why the ratification procedure in *Patterson Enterprises* and *Prosperity Realty* cannot be used for that purpose. The subrogee insurance company under such ratification mechanism does not have to be made a party plaintiff but does have to bind itself to the outcome of the litigation in *res judicata* effect. Tennessee cases construing 17.01, Tenn. R. Civ. P., presuppose that the action in issue is brought not by the subrogor but rather by the subrogee in the name of the subrogor. *Traveler's Ins. Co. v. Williams,* 541 S.W.2d 587 (Tenn. 1976); *Aetna Ins. Co. v. Little Giant Mfg. Co.,* 958 S.W.2d 749 (Tenn. Ct. App. 1997).

The late-filed March 10, 1999 "Claimant's Notice of Joinder of BellSouth Corporation" and "BellSouth Corporation's Ratification of Claims" solve all *res judicata* effect problems under Tennessee Rule 17.01. The definitive question before the court on this appeal is the correctness of the Claims Commission's action in striking these March 10, 1999 pleadings as untimely and insufficient. Having observed that the failure of the Hartman claimants to disclose in their pleadings prior to March 10, 1999 that they were representing a subrogee and the failure of BellSouth Corporation to affirmatively bind itself to accept *res judicata* effect of final judgment in the case caused their problems in the first place, it is necessary now to look to the other side of the coin.

The last sentence of Tennessee Rule 17.01 provides exactly as does the last sentence of Federal Rule 17(a). "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

8

More than two years before the Claims Commission decision of March 16, 1998, which was the subject of the previous appeal in this case, claimants Hartman, in support of their motion for partial summary judgment, submitted the affidavit of Edward L. Rankin, III, an attorney for BellSouth Telecommunications. This affidavit disclosed in detail the BellSouth medical plan, its subrogation provisions, its payment of $1,223,515.29 for medical expenses of Scott G. Hartman in the period April 17, 1987 through February 1, 1990, its recovery from the insurance carrier for the defendants of $196,848.58 and a net balance for its subrogation interest of $1,026,666 as of September 2, 1993. The defendants offered no objection under Rule 17.01 that the claim was not being prosecuted by the "real party in interest." The first time any assertion was made by the defendants was on February 8, 1996 when the defendants filed their "Response to Claimants' Motion for Partial Summary Judgment crediting and liquidating the amount of the University's liability for medical attention." On the seventh page of this response, it is asserted:

> The BellSouth Corporation is not a party to this action and the Commission is not presented any claim for disposition as to whether BellSouth or the University would be primarily responsible for the medical care expenses which BellSouth paid. BellSouth has brought no action against the University seeking reimbursements of these payments.

The defendants never having, by motion or other pleading, objected under the "real party in interest" requirements of Rule 17.01 might easily be held to have waived such objection. *Hefley v. Jones*, 687 F.2d 1383 (10th Cir. 1982); *United HealthCare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563 (8th Cir. 1996). In *Sun Refining and Manufacturing Co. v. Goldstein Oil Co.*, 801 F.2d 343 (8th Cir. 1986), the court observed:

> Fed.R.Civ.P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." We have held that "a real party in interest objection should be raised with 'reasonable promptness' in the trial court proceedings. If not raised in a timely or seasonable fashion, the general rule is that the objection is deemed waived." *Chicago & Northwestern Transportation Co. v. Negus-Sweenie, Inc.*, 549 F.2d 47, 50 (8th Cir. 1977) (citations omitted). In *Chicago & Northwestern Transportation Co.*, raising the defense for the first time on appeal was found to be untimely because the trial court was not given the chance

9

to correct any error. *See id.* In the present case, Apex did not allege that Sun Transport, rather than SRMC, was the real party in interest until after trial. The Tenth Circuit has twice ruled that the real party in interest defense was waived because it was not asserted until very shortly before trial. We feel that the real party in interest issue was untimely raised by Apex in this case, and we are therefore inclined to hold that the defense was waived.

Moreover, it does not appear that SRMC was given the opportunity to obtain ratification of the action from Sun Transport prior to entry of judgment. Rule 17(a) provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

SRMC obtained ratification from Sun Transport shortly after judgment was entered. SRMC moved to have the case reopened pursuant to Fed.R.Civ.P. 52 and 59 based on the ratification, but the court denied the motion. This case presents the unusual situation where Sun Transport is owed demurrage but SRMC is the only party with the right to enforce the contractual provision. Had Apex asserted the real party in interest defense before conclusion of the evidence, Sun Transport could have been joined as a party or could have ratified the action well before the case was submitted.

No apparent prejudice to Apex would have resulted had the district court accepted the ratification. The effect of not accepting the ratification is a forfeiture by Sun Transport of its demurrage claim. Rule 17(a) was designed to avoid such an unjust result. *See Chicago & Northwestern Transportation Co.*, 549 F.2d at 50. We therefore conclude that the court erred in not accepting the ratification obtained by SRMC from Sun Transport.

*Sun Refining,* 801 F.2d 3 at 344-45 (citations omitted).

It is not necessary in this case to hold that the defendants have waived the "real party in interest" defense. The record shows that the defendants were

well advised as to the facts involving the BellSouth subrogation interest, at least as early as the filing of the Rankin affidavit on February 21, 1996. The subrogation difference between Federal Rule 17(a) and Tennessee Rule 17.01 might well induce one to conclude that federal interpretations of Federal Rule 17(a) were not applicable to Tennessee Rule 17.01. The "relation back" provisions of Rule 17.01 are precisely the same as the federal rule. There has been no adjudication on the merits in this case as to whether or not or to what extent BellSouth Corporation may be entitled to recover from the defendants on their subrogation claim. There is little or no prejudice to the defendants by allowing trial on the merits on a claim of which they have been aware since February 1996. On the other hand, to sustain the position of the defendants would produce a harsh result for BellSouth Corporation.

In this respect we are confronted with a situation similar to that which faced the Sixth Circuit Court of Appeals in *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir. 1974). In that case, the government had raised the real party in interest defense in its initial answer to the complaint. The Sixth Circuit Court of Appeals held that under Rule 17(a), Fed. R. Civ. P., even if the action is prosecuted in the name of one not a real party in interest and the defense is properly raised before the trial court, dismissal is not necessarily appropriate. The court held as follows:

> In the case at bar, Executive Jet presented its claim well within the statutory period. At that point the Government was on sufficient notice to begin assembling witnesses and evidence in preparation for a defense on the merits. In no sense was this claim permitted to slumber or to become stale. Indeed, under general principles of subrogation, the subrogee stands in the shoes of the subrogor. Thus it is difficult to see how the Government's substantive defense would have been affected if the insurers had joined in Executive Jet's administrative claim and in the present litigation.
>
> In addition, the United States cannot claim surprise at the insurers' late entry into the case. The Government does not argue that it was unaware of the insurers' interest in the claim. In fact, the Government raised in its answer the defense that Executive Jet was not the real party in interest, and this pleading was filed more than one year before the statute of limitations had run. We are convinced that our decision in no way will prejudice the Government except

11

insofar as it may have hoped to avoid entirely a substantial portion of its potential liability through an adroit application of § 2401(b). On the other hand, it is clear that to sustain the Government's position would produce a harsh result for the insurers, for they would be left with no recourse against the United States, which is alleged to have been the party ultimately responsible for this airplane accident.

*Executive Jet*, 507 F.2d at 516 (citation omitted).

In the order of remand from the previous appeal, we held as follows: "Moreover, the way is open for the third party subrogee to assert its rights, if any, in a separate claim to the claims commission." To hold now that Rule 17.01 is not an appropriate means of implementing this "separate claim" is to exalt form over substance which we decline to do. The trial court erred in striking the March 10, 1999 "Notice of Joinder of BellSouth Corporation" and "BellSouth Corporation's Ratification of Claims." These pleadings, albeit late filed, are adequate to bind BellSouth Corporation under *res judicata* principles to whatever final judgment is ultimately entered in this case. The purpose of Rule 17.01 is thus served and the "relation back" provisions of the Rule are applicable to the end that the case should be tried on its merits.

The judgment of the Claims Commission is reversed and the case is remanded for trial on the merits of the issues drawn between the claimants and the defendants as ratified by BellSouth Corporation. Costs of this cause are taxed to the appellees for which execution may issue.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE