**DOMINO MEDIA, INC., a dissolved corporation, Plaintiff,**

v.

**Ann KRANIS and Richard Kranis, Defendants.**

Nos. 97 Civ.1992(LAK), 98 Civ. 3767(LAK).

United States District Court, S.D. New York.

June 25, 1998.

---

Joshua L. Mallin, Weg & Myers, P.C., for Plaintiff.

John D. D'Ercole, Anthony S. Genovese, Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C., for Defendant Ann Kranis.

James G. Simms, for Defendant Richard Kranis.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Defendant Richard Kranis conveyed his interests in two valuable pieces of real estate to his wife, defendant Ann Kranis, shortly after plaintiff Domino Media, Inc. ("Domino") sued him for legal malpractice. Domino subsequently obtained a judgment in excess of $1 million which Kranis has failed to satisfy. This action seeks to set aside these and certain other conveyances as fraudulent.

### Facts

*Prior Proceedings*

*Domino's Action Against Maryland Casualty*

Domino, a former Colorado corporation, once operated a music recording business through its wholly owned subsidiary Media Sound, Inc. ("Media Sound"), at 311 West 57th Street, New York, New York. Noisy and disruptive construction activities for a 50 story tower adjacent to and surrounding Media Sound's recording studios began in August 1985.[1] This construction, which continued until 1988, rendered virtually impossible Media Sound's efforts to record music and consequently caused Domino to lose a substantial portion of its revenues.[2] As a result, Media Sound filed for Chapter 11 bankruptcy protection in February 1986,[3] and a year later Domino was suspended under Colorado law for failure to pay Colorado state taxes.[4]

Eventually, Domino and Media Sound filed a claim in the amount of $1,068,385 under a business interruption insurance policy issued by Maryland Casualty Co. ("Maryland") for losses caused by the construction activities.[5] Maryland, however, refused to pay. In a letter dated February 24, 1987, Maryland claimed that Domino's policy was void and, in any event, that the claimed loss was not covered.[6] Consequently, on October 27, 1987, the United States Bankruptcy Court for the Southern District of New York, which was then responsible for the Media Sound bankruptcy, authorized the initiation of lawsuits against Maryland and against the construction companies responsible for Media Sound and Domino's losses.[7] Kranis was the lawyer hired to represent Domino and Media Sound in these two suits.[8]

Kranis drafted and filed complaints on behalf of Domino and Media Sound against Maryland in August 1987 and against the construction companies in December 1987, both in the Supreme Court, New York County.[9] Because Kranis failed to comply with a court order to submit an amended complaint, however, Domino's complaint against Maryland was dismissed some time in late 1988 or early 1989.[10]

During the pendency of these claims, Domino remained unable to pay its Colorado state taxes. In consequence, on January 1, 1991, it was administratively dissolved as a corporation pursuant to Colorado law.[11]

*Domino's Malpractice Action Against Kranis*

In August 1991, shortly after its dissolution, Domino brought a malpractice action against Kranis for damages in the amount of $1,250,000, the liability limit for the business interruption coverage provided for by the Maryland policy.[12] Kranis initially did little to defend himself against Domino. He failed to comply with numerous discovery orders, to appear at his deposition, or to respond to a motion by Domino to strike his answer. As a result, Justice Shainswit of the New York Supreme Court issued an order of default

| | |
|---|---|
| **1.** Genovese Aff. Ex. 6. | **7.** Genovese Aff. Ex. 15. |
| **2.** *Id.;* Genovese Aff. Ex. 9. | **8.** *Id.* |
| **3.** Genovese Aff. Ex. 8. | **9.** Genovese Aff. Exs. 16, 17, 18. |
| **4.** Genovese Aff. Ex. 1. | **10.** Mallin Aff. Exs. D, E, F. |
| **5.** Genovese Aff. Ex. 13. | **11.** Genovese Aff. Ex. 1. |
| **6.** Genovese Aff. Ex. 14. | **12.** Mallin Aff. Ex. G. |

and ultimately struck Kranis' answer.[13] She then held an inquest, in August 1993, to determine the extent of Domino's damages.[14]

While the issue of damages was pending, Kranis moved to dismiss the malpractice action on the theory that Domino lacked capacity to sue in the New York courts under N.Y.BUS.CORP.L. § 1312(a). Justice Shainswit denied this motion on November 10, 1994, finding that Kranis had waived the defense, that the argument was "incredible" given that Kranis himself had earlier drafted a complaint on behalf of Domino which listed Domino as "a foreign corporation . . . authorized to do business in the State of New York," and that Domino had "taken steps to" comply with the statute so as to permit suit in the New York courts.[15] The Appellate Division affirmed the denial of Kranis' motion and remanded to Justice Shainswit to decide the damages issue.[16]

Not satisfied, Kranis again moved the dismiss the complaint, this time arguing that Domino had failed to establish damages because the only damages suffered were those of Domino's subsidiary, Media Sound, and on the added grounds that Domino lacked standing and the New York Supreme Court lacked jurisdiction over the case. On February 20, 1996. Justice Shainswit denied Kranis' motion and granted Domino's cross-motion to enter damages in the amount of $1,250,000.[17] Justice Shainswit found that the claim that Domino had not suffered damages was without merit and that the arguments regarding jurisdiction and damages

already had been litigated, decided adversely to Kranis, and affirmed on appeal.[18]

The Appellate Division unanimously affirmed this ruling.[19] It held that the record supported a finding of $1,250,000 in damages for Domino and that all of Kranis' other arguments, including arguments regarding Domino's capacity to sue and the court's jurisdiction, had been raised and disposed of and, in any event, were without merit.[20] Kranis' motion for reargument was denied,[21] and the New York Court of Appeals denied leave to appeal the decision.[22]

Undeterred, Kranis moved to set aside the judgment. He asserted again, among other things, that Domino had not suffered any damages and that Domino lacked the capacity to sue under N.Y.BUS.CORP.L. § 1312(a). He argued also that Domino already had recovered the full amount owed to it under a settlement with the construction companies[23] and that the judgment against him therefore would give Domino a "double recovery." The state court rejected all of Kranis' contentions.[24] It ruled that the arguments that Domino had not suffered any damages and that it lacked capacity to sue already had been decided adversely to Kranis. It rejected Kranis' contention that the judgment should be set aside to avoid double recovery in light of the settlement with the construction companies on the grounds that the settlement was not based on "newly discovered evidence" and that Domino in any case had suffered damages "in excess of $14 million," so the judgment against Kranis would not

---

13. Mallin Aff. ¶ 17, Ex. O. The Appellate Division affirmed Justice Shainswit's order to strike the answer on default on June 23, 1994. *Domino Media, Inc. v. Kranis*, 205 A.D.2d 411, 614 N.Y.S.2d 130 (1st Dept.1994); Mallin Aff. Ex. U.

14. Mallin Aff. ¶ 18.

15. Mallin Aff. Ex. M.

16. *Domino Media v. Kranis*, 215 A.D.2d 278, 627 N.Y.S.2d 554 (1st Dept.1995); Mallin Aff. Ex. N.

17. Mallin Aff. Ex. O.

18. *Id.*

19. 237 A.D.2d 232, 655 N.Y.S.2d 943 (1st Dept. 1997); Mallin Aff. Ex. R.

20. 237 A.D.2d at 232, 655 N.Y.S.2d at 943; Mallin Aff. Exs. Q, R.

21. Mallin Aff. Ex. S.

22. Mallin Aff. in Further Support of Plaintiff's Motion for Summary Judgment (hereinafter "Mallin Reply Aff.") ¶ 3 & Ex. A.

23. While Domino's action against Kranis was pending, it settled its claim against the construction companies for $1,350,000. Genovese Aff. Ex. 31.

24. Mallin Aff. Ex. T.

produce a double recovery.[25] The Appellate Division not only affirmed the decision, but also imposed $2,500 in sanctions on Kranis for relitigating issues that were decided in prior appeals.[26]

*The Challenged Conveyances*

Kranis' efforts to avoid paying the malpractice judgment were not limited to filing repetitive motions in the state court. On December 1991, shortly after Domino filed the malpractice action against him, Kranis transferred his interests in two pieces of real estate to his wife, defendant Ann Kranis, for the sum of $10 each.[27] The two properties at issue are (1) a house and property located at 6, The Tulips, Roslyn Heights, New York, which had been held jointly by Mr. and Mrs. Kranis for over twenty years, and (2) apartment buildings and land located at 7–15 West 87th Street, along Central Park West, which had been solely in Richard Kranis' name since the 1960's.

Domino contends also that in February 1993, while the malpractice action was pending, the defendants sold another property in East Hampton, New York, for $725,000 and bought a home in Naples, Florida, which is outside the reach of creditors under the Florida Homestead Law.[28] According to Domino, Kranis received a check payable to him in the amount of $72,500 and another check payable jointly to him and his wife in the amount of $653,874.71 for the sale of the East Hampton home, and Kranis transferred both sums to his wife without fair consideration.[29] Domino complains also that Kranis withdrew a total of $170,000.00 from two Chase Manhattan Bank savings accounts and transferred that sum, plus another $40,000

he received as attorney's fees, to defendant Ann Kranis without fair consideration.[30]

Because the malpractice judgment against Kranis remains largely unsatisfied,[31] Domino commenced No. 97 Civ.1992 on March 20, 1997 to set aside the conveyance of the West 87th Street property. At the same time, Domino commenced an action in the Eastern District to set aside the conveyance of the Roslyn Heights property. That action was transferred to this Court and denominated No. 98 Civ. 3767.[32]

Domino's complaints in the two actions each state two causes of action. The first cause of action in 97 Civ.1992 seeks to set aside as fraudulent the conveyance of the West 87th Street property to Ann Kranis, and the first cause of action in 98 Civ. 3767 seeks to set aside as fraudulent the conveyance of the Roslyn Heights property. The second causes of action in both complaints seek to set aside as fraudulent the transfer to Ann Kranis of the savings account withdrawals, the attorney's fees, and the sums for the sale of the East Hampton home.

The defendants' answers deny that any of the transfers were fraudulent and also raise ten affirmative defenses. In the first and second, they assert that Domino lacked the capacity to sue under Colorado law in the prior action and lacks capacity to sue here because it is a dissolved corporation. The third affirmative defense claims that Domino's settlement with the construction companies offset or satisfied any liability to plaintiff, and that this action therefore is an attempt to recover double. The fourth and fifth defenses contend that Domino obtained its judgment against Kranis by fraud in

---

**25.** *Id.* ("Patently plaintiff has been damaged far in excess of the combination of the payments from the other defendants and the judgment, almost totally unpaid, against defendants.").

**26.** Mallin Reply Aff. ¶ 4 & Ex. B. On April 2, 1998, the New York Court of Appeals denied leave to appeal. Mallin Ltr. of Apr. 8, 1998, Ex 1.

**27.** *See* Mallin Aff. Exs. I and J.

**28.** *Id.* Ex. K.

**29.** Cpt. ¶ 14.

**30.** *See* Mallin Aff. ¶ 14, n. 5.

**31.** According to the complaint, the plaintiff has been able to collect only $12,913.71 of the original judgment against Mr. Kranis, in addition to the $250 fine levied by the Supreme Court against him for being held in contempt of court. Cpt. ¶ 7.

**32.** The parties stipulated on April 17, 1998, to transfer the Eastern District action to the Southern District for consolidation with the instant action. The stipulation was endorsed by Judge Wexler.

that Media Sound, not Domino, suffered loss by virtue of the construction activities. The defendants allege in the sixth affirmative defense that the malpractice judgment also was obtained by fraud on the bankruptcy court. The seventh affirmative defense asserts that the real party in interest is Media Sound, not Domino, and that Domino therefore cannot maintain the instant action. In the eighth affirmative defense, the defendants contend that the second cause of action duplicates the Eastern District suit and that the instant action should be stayed. The ninth affirmative defense alleges that process served on the defendants was insufficient, and the tenth claims that an appeal is pending in the malpractice judgment in the New York Supreme Court which may be dispositive of this case.

## The Pending Motions

The procedural posture of the motions now before the Court is somewhat unusual. Domino moved in No. 97 Civ.1992, the original Southern District case, (a) to transfer the Eastern District action to this Court and (b) for summary judgment pursuant to FED. R.CIV.P. 56 to set aside the conveyances of the properties at issue in both cases. The defendants litigated the validity of the conveyances of both properties in No. 97 Civ. 1992 and cross-moved in that case for summary judgment on the grounds that the plaintiff lacked capacity to bring either action under Colorado state law, that N.Y.BUS. CORP.L. § 1312(a) likewise bars both suits because Domino is unauthorized to do business in New York, that Domino's judgment in the malpractice action was procured by fraud and, finally, that Domino is not entitled to recover because it already settled with the construction companies in the amount of the claim. After all of the parties had fully submitted their motions, the parties stipulated to the transfer of the Eastern District action to this Court and to the consolidation of both cases.

■ As the parties fully briefed the merits of the real estate conveyances at issue in both cases, albeit only in No. 97 Civ.1992, the Court regards these issues as properly before it despite the absence of a formal motion in No. 98 Civ. 3767. On the other hand, none of the motions addressed the second cause of action in either complaint, each of which relates to the savings account withdrawals discussed above.[33] Consequently, the plaintiff's motion for summary judgment must be denied to the extent it pertains to the second cause of action in each case.

## Discussion

### Plaintiff's Capacity to Sue

■ Defendants argue that plaintiff lacks capacity to sue both because (1) Colorado law prohibits dissolved corporations from bringing suit more than two years after dissolution, and (2) New York law forbids suit by a foreign corporation doing business in this state without authorization.[34] Although the issue was not raised by either party, the Court first must consider which law governs a corporation's capacity to sue in this diversity case.

### Choice of Law

■ FED.R.CIV.P. 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."[35] By its plain terms, the Rule seems to contemplate that a foreign corporation may file suit in federal court so long as it has capacity to sue under the law of its state of incorporation and regardless of whether it does so also under the law of the forum. As Domino was organized under the laws of Colorado, the Rule at

---

33. See Cpt. ¶ 13.

34. Under New York law, a foreign corporation doing business here without authorization lacks capacity to sue. See, e.g., Hot Roll Mfg. Co. v. Cerone Equipment Co., 38 A.D.2d 339, 341, 329 N.Y.S.2d 466, 467 (3d Dept.1972) ("Failure of a foreign corporation doing business in New York to comply with the requirements of subdivision (a) of section 1312 of the Business Corporation Law affects that corporation's legal capacity to maintain the action....").

35. Rule 17(b) applies "to dissolved corporations as well as existing corporations." Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc., No. 96 Civ. 6320(SS), 1997 WL 370595, at *2 (S.D.N.Y. July 1, 1997); Lottman v. Piper Industries, Inc., 726 F.Supp. 384, 385 (N.D.N.Y.1989).

first blush suggests that the law of Colorado alone controls Domino's legal capacity to sue in federal district court in New York.[36] The matter, however, is not that simple.

In *Woods v. Interstate Realty Co.*,[37] the Supreme Court held that a Mississippi door-closing statute similar to the relevant New York statute [38] precluded a Tennessee corporation from maintaining a diversity suit in a Mississippi federal court because it was not qualified to do business in Mississippi as required by Mississippi law. Relying on *Erie Railroad Co. v. Tompkins*,[39] the majority reasoned that a party barred by statute from recovery in the state court ought also be barred from recovery in the federal courts in that state lest the federal courts discriminate in favor of nonresidents who might take advantage of diversity jurisdiction in the federal courts.[40] The *Woods* opinion, however, did not even mention Rule 17(b).

Nearly twenty years later, the Supreme Court modified its *Erie* analysis in Hanna v. Plumer.[41] The Court there considered whether state law or FED.R.CIV.P. 4(d)(1) governs service of process in a federal court sitting in diversity. It determined that

where a Federal Rule of Civil Procedure directly conflicts with a state law of the forum, the district court should apply the Federal Rule, provided it does not exceed the authority of Supreme Court under the Rules Enabling Act [42] or violate the Constitution.[43]

*Hanna* implicitly calls *Woods* into question by suggesting that Rule 17(b) applies to the exclusion of a forum state door-closing statute so long as it is a valid exercise of authority under the Rules Enabling Act. At least one district court has analyzed Rule 17(b) under the *Hanna*/Rules Enabling Act standard and concluded that Rule 17(b) exceeds the Supreme Court's power under the Rules Enabling Act because it abridges a substantive right of the forum state's citizens—encouraging foreign corporate qualification—and thus that the state door-closing statute of the forum should be applied rather than Rule 17(b).[44] But others argue that Rule 17(b) is a valid exercise of the Court's power under the Rules Enabling Act because it comports with the Act's goal of a uniform set of procedural rules in federal courts nationwide and because the states' interests in enforcing door-closing statutes

---

**36.** *Accord Old Republic Ins. Co. v. Hansa World Cargo Svc., Inc.*, 170 F.R.D. 361, 372 (S.D.N.Y. 1997); *Corcoran v. New York Power Authority*, 935 F.Supp. 376, 391 (S.D.N.Y.1996); *Lottman*, 726 F.Supp. at 385; *Scholnick v. Schatz*, 708 F.Supp. 57, 58 (S.D.N.Y.1989); *Gonzalez v. Progressive Tool & Die Co.*, 455 F.Supp. 363, 365 (E.D.N.Y.1978).

**37.** 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

**38.** N.Y.BUS CORP.L. § 1312(a).

**39.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**40.** *Id.* at 538, 69 S.Ct. 1235.

**41.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**42.** The Rules Enabling Act provides that rules promulgated by the Supreme Court may not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (1982).

**43.** *Hanna*, 380 U.S. at 463–64, 85 S.Ct. 1136; *id.* at 473–74, 85 S.Ct. 1136 ("Erie and its offspring cast no doubt on the long-recognized power of

Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules.").

**44.** *McCollum Aviation, Inc. v. Cim Assoc., Inc.*, 438 F.Supp. 245 (S.D.Fla.1977). Other courts have concluded post-*Hanna* that foreign corporations have capacity to sue if they comply with both the law of the state of incorporation and the door-closing law of the forum state. *E.g., Regal Custom Clothiers*, 1997 WL 370595, at *2; *Boggs v. Blue Diamond Coal Co.*, 497 F.Supp. 1105, 1119 n. 72 (E.D.Ky.1980); *see also* 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE· CIVIL 2D § 1569, at 496 (1990); 3A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 17.26[1][b] (1998). Yet another district court approach has been to apply Rule 17(b) only in non-diversity suits. *E.g., Farris v. Sambo's Restaurants, Inc.*, 498 F.Supp. 143 (N.D.Tex. 1980); *Weinstock v. Sinatra*, 379 F.Supp. 274 (C.D.Cal.1974). Finally, at least one district court applied *Erie* to Rule 17(b) and found that the forum's door-closing statute controls to the exclusion of Rule 17(b) because it concluded that the door-closing statute affects the initial choice of forum and *Erie* sought to eliminate forum-shopping. *Power City Communications v. Calaveras Telephone Co.*, 280 F.Supp. 808 (E.D.Cal. 1968).

in the federal courts is weak.[45] Although the Second Circuit has applied *Woods* subsequent to *Hanna*, it has not explicitly considered their apparent inconsistency.[46] Hence, the issue remains open in this Circuit.

As will appear, the defendants here have not demonstrated Domino's lack of capacity to sue under either Colorado or New York law. Accordingly, this Court leaves for another day the determination whether Rule 17(b) applies in diversity cases to the exclusion of New York's door-closing statute.

*A Dissolved Corporation's Capacity to Sue Under Colorado Law*

The defendants' argument that Domino is barred from bringing suit under Colorado law is predicated on a now repealed Colorado statute which provided that:

> "The dissolution of a corporation in any manner shall not take away or impair any remedy available to or against the corporation, its directors, officers, or shareholders for any right or claim existing or any liability incurred prior to dissolution if action or other proceeding thereon is commenced within two years after the date of the dissolution. The foregoing limitation shall not apply to any action affecting title to real estate." [47]

The defendants contend that Domino is barred from maintaining this suit because it was brought more than two years after Domino's dissolution on January 1, 1991. Domino counters that this provision, former Section 7–8–122, was repealed on January 1, 1994

and replaced by Section 7–114–105(1), which eliminated the two year limitation. Domino contends also that former Section 7–8–122, even if it applied, would not bar this action because (1) the malpractice suit from which this action derives was commenced within the two year period, and (2) the fraudulent conveyance here at issue did not exist "prior to dissolution" so the time limit by its own terms therefore does not apply.

■ Domino's contention that Section 7–114–105 applies is without merit. Section 7–117–101 of the new law provides that Section 7–114–105 applies only to "existing corporations," defined as "any domestic corporation that was in existence on June 30, 1994." [48] Domino was dissolved by operation of law on January 1, 1991.[49] As it was not "in existence on June 30, 1994," the law enacted on July 1 of that year by its own terms does not apply to Domino.

■ Although the new statute does not apply, the question remains whether the former Section 7–8–122(1) bars this action. Under the common law, when a corporation was dissolved it was as a deceased person, completely unable to file or to defend against lawsuits.[50] Section 7–8–122 modified the common law in Colorado to provide a two year corporate survival period in which the corporation could sue or be sued on claims and liabilities arising prior to its dissolution.

The Colorado courts appear not to have considered whether Section 7–8–122 bars an action filed beyond the two year period to

---

**45.** *See* Laura E. Little, *Out of Woods and Into the Rules: The Relationship Between State Foreign Corporation Door–Closing Statutes and Federal Rule of Civil Procedure 17(b)*, 72 VA.L.REV. 767, 799–805 (1986); Allan R. Stein, *Erie and Court Access*, 100 YALE L.J. 1935, 1998 n. 297 (1991).

**46.** *See Netherlands Shipmortgage Corp., Ltd. v. Madias*, 717 F.2d 731, 735 (2d Cir.1983). In *In re Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp.*, 550 F.2d 1320 (2d Cir.1977), the Second Circuit refused to apply N.Y.BUS.CORP.L. § 1312(a) to an action to compel arbitration under the Federal Arbitration Act with diversity as its jurisdictional basis. In so doing, the Second Circuit questioned the holding of *Woods*, but ultimately relied on the federal nature of the remedy provided by the Arbitration Act. *Cf. id.* at 1324 ("Even if BCL § 1312(a) may be described as affecting the district court's jurisdiction, New

York may not place such a financial and procedural burden on a foreign corporation seeking to vindicate its right to bring a diversity action before the federal courts."), *with id.* at 1326 (distinguishing *Woods* on grounds that *Woods* was governed by local law).

**47.** COLO.REV.STAT.ANN. § 7–8–122(1) (West, WESTLAW through 1993 Sess.), *repealed by* Colorado Laws 1993, H.B. 93–1154, S 46 (effective July 1, 1994).

**48.** COLO.REV.STAT.ANN. § 7–117–101 (West, WESTLAW through 1997 1st Ex.Sess.).

**49.** Genovese Aff. Ex. 1.

**50.** 9 WILLIAM MEADE FLETCHER, ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4224.60 (perm. ed. rev.vol.1991).

enforce a judgment obtained in an action that was timely commenced. Related authority and sound considerations of policy suggest, however, that Colorado would uphold Domino's right to maintain this action to enforce the judgment.

To begin with, statutes such as former Section 7–8–122(1) require only that an action by a dissolved corporation be commenced within the statutory period, not that it be completed.[51] Thus, a dissolved corporation which timely commences a suit may prosecute the action to conclusion.

How then is a judgment obtained by a dissolved corporation after the expiration of the statutory period to be enforced? The corporation, it appears, may assign or otherwise transfer the claim on the judgment to its former shareholders, and the shareholders then may sue on the judgment.[52] In states which, like New York, permit enforcement of a judgment in supplementary proceedings in the action in which the judgment was rendered,[53] the corporation itself may use those procedures to enforce the judgment because the use of those procedures does not require the institution of a new action, so the issue of capacity to sue therefore does not arise. And it is unlikely that the authors of survival statutes intended to

preclude enforcement where institution of a new action is required. While survival statutes are intended to mitigate the harshness of the common law effects of corporate dissolution while nevertheless imposing a limit on the winding up period,[54] a distinction that on the one hand would permit enforcement of such a judgment (i) by assignment and (ii) to the extent that state rules of practice allow enforcement without the commencement of a new action but, on the other, deny enforcement where rules of practice or life's practicalities require commencement of a new action would not uniformly serve the goal of putting the *quietus* to corporate existence. Rather, it would introduce a level of arbitrariness that should not be imputed to legislatures in the absence of clear indications that they so intended.

This view is supported by cases in Colorado and elsewhere. In *Bankers Trust Co. v. Hall*,[55] the Colorado Supreme Court held that a dissolved corporation was entitled to seek a writ of error to review a judgment beyond the survival period, despite the fact that the application for the writ technically constituted the commencement of a new action. And the Seventh Circuit reached a similar result in circumstances even more closely on point in *Citizens Electric Corp. v.*

**51.** *Chicago Title and Trust Co. v. Fortyone Thirty–Six Wilcox Bldg. Corp.*, 302 U.S. 120, 128–29, 58 S.Ct. 125, 82 L.Ed. 147 (1937) (Illinois law); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1186 (7th Cir.1980) (Illinois law).

**52.** *See Canadian Ace Brewing Co.*, 629 F.2d at 1186–87. The *Canadian Ace* court, in accordance with *Levy v. Liebling*, 238 F.2d 505 (7th Cir.1956), *cert. denied*, 353 U.S. 936, 77 S.Ct. 812, 1 L.Ed.2d 759 (1957), held that former shareholders of a dissolved corporation could sue on a judgment obtained by the corporation prior to dissolution where the judgment passed to the shareholders on dissolution. *Accord, e.g., Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, 499–500, 701 P.2d 934, 937 (1985). It held also that former shareholders of a dissolved corporation could not sue oil a claim possessed prior to dissolution but never sued upon by the corporation. It did not directly address the question whether former shareholders could sue on a claim prosecuted to judgment and then assigned or distributed by a dissolved corporation. In view of the court's explicit recognition that a dissolved corporation could prosecute to

judgment any action brought within the statutory survival period, the logical implication of the decision is that at least the former shareholders then could enforce the judgment, as there would be little basis for permitting prosecution of the action to judgment if the judgment then were unenforceable.

**53.** New York permits enforcement of a judgment in the principal action by, among other devices, levy and execution against real and personal property and, in rare circumstances, arrest of the judgment debtor. N.Y. CPLR §§ 5230–36, 5241–42, 5250. The New York courts upon motion may direct a person in possession of property of the judgment debtor to turn the property over to the judgment creditor. *Id.* § 5225(a). In order to obtain property of the judgment debtor which is in the possession of third parties, however, it often is necessary to commence a special proceeding—ordinarily an independent litigation. *see id.* §§ 105(b), 401—against the third party. *Id.* §§ 5225(b), 5227.

**54.** *Canadian Ace*, 629 F.2d at 1185.

**55.** 116 Colo. 566, 183 P.2d 986 (1947) (*en banc* ).

*Bituminous Fire & Marine Insurance Co.,*[56] in which it held that a dissolved Illinois corporation could commence an action to garnish insurance proceeds to enforce a judgment rendered in a timely commenced action on the theory that the proceedings to enforce the judgment should be regarded for this purpose as part of the original case even if technically an independent action.[57]

There is still an additional reason to suppose that the Colorado legislature did not intend to make the ability of a dissolved corporation to enforce a judgment in a timely commenced action depend upon whether the particular enforcement device, as a matter of practice, involves the institution of an independent action. Most dissolution statutes provide that the assets of a corporation devolve upon the stockholders when the corporation is dissolved. Indeed, this principle is at the core of cases holding that stockholders may enforce corporate judgments following expiration of statutory survival periods.[58] Here, however, the Colorado statutes provide specifically that "title to corporate property does not vest in the shareholders upon dissolution; rather, it remains in the corporation."[59] Denying Domino and other dissolved Colorado corporations the right to sue on a judgment obtained in an action commenced within the statutory survival period thus would lead to the anomalous result of barring suit to enforce a judgment while at the same time precluding their stockholders from succeeding to the corporation's interests, at least absent formal distributions of corporate assets which rarely if ever accompany an administrative dissolution.

Moreover, the Supreme Court of Colorado has permitted a dissolved corporation to redeem its property from a tax sale, reasoning that the payment of taxes levied upon the property preserves the corporate assets for the benefit of the stockholders and the corporation's creditors.[60] An action to enforce a judgment against a fraudulent conveyance similarly preserves the corporate assets for the benefit of the stockholders and corporate creditors.

Finally, allowing a dissolved corporation to enforce its judgment post-survival period comports also with the policies underlying Colorado's corporate dissolution statute. The purpose of the statute extending the period of corporate existence is to permit the corporation to collect its assets, to convey and dispose of its property, and to discharge its obligations.[61] The rule defendants propose—that no suit may be brought outside of the survival period to enforce a judgment in favor of a dissolved corporation even if the underlying claim were timely commenced within the period—would frustrate the statute's goal of allowing the corporation to collect its assets. The rule would permit also defendants such as Kranis to delay the entry of the judgment past the survival period and thereby effectively circumvent any enforcement of that judgment. Surely the Colorado legislature did not intend to supply a right to sue or be sued without a consequent remedy to enforce that right.

Accordingly, the Court holds it permissible for a dissolved Colorado corporation which obtains a judgment in an action commenced within the survival period to sue outside the two year corporate survival period to enforce that judgment.

*New York's Door–Closing Statute*

■ Defendants argue also that Domino lacks legal capacity to bring the instant ac-

---

**56.** 68 F.3d 1016 (7th Cir.1995).

**57.** *Id.* at 1020.

**58.** *Levy,* 238 F.2d at 507–08; *see Canadian Ace,* 629 F.2d at 1186.

**59.** *Michaelson v. Michaelson,* 939 P.2d 835, 841 (Colo.1997) (en banc). The law in effect currently and at the time the judgment was entered, COL REV.STAT.ANN. § 7–114–105(2), provides that "[d]issolution of a corporation does not: (a) [t]ransfer title to the corporation's property...."

The law formerly in effect, COL.REV.STAT.ANN. § 7–8–122(2) (West, WESTLAW through 1993) (repealed 1994), stated that "after dissolution, title to any corporate property not distributed or disposed of in the dissolution shall remain in the corporation."

**60.** *See Ruth v. Devany,* 84 Colo. 476, 479, 271 P. 623, 624 (1928).

**61.** COL.REV.STAT.ANN. §§ 7–8–105(2), 7–8–122(2) (West, WESTLAW through 1993) (repealed 1994).

tion because it is not in compliance with the New York door-closing statute, N.Y.Bus. Corp.L. § 1312(a), which provides in pertinent part that:

"A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute ... as well as penalties and interest charges thereto, accrued against such corporation. This prohibition shall apply to any successor in interest of such foreign corporation." [62]

Non-compliance with the statue is an affirmative defense, and a defendant seeking to invoke it bears the burden of establishing that the plaintiff has failed to meet the section's requirements.[63]

■ In this case, the defendants neither have pleaded the defense of lack of capacity to sue based upon the New York door-closing statute nor alleged in their answer that Domino, at the time this action was commenced, was doing business in New York.[64] Defendants therefore have waived the defense.[65]

■ Even if the defense had not been waived by defendants' failure to plead it, the showing they have made on this motion would be insufficient to defeat summary judgment. "[O]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense." [66] Here, defendants did not assert in their Rule 56.1 statements [67] that Domino was doing business in New York at the time this action was commenced, which alone would be sufficient ground to overrule their defense and grant summary judgment. And the only evidence to which they point is manifestly insufficient to raise a genuine issue of fact on the point.

■ Defendants rely on two pieces of evidence in resisting plaintiff's motion for summary judgment: (1) three selected pages of an affidavit of Domino's counsel in the state court action, obviously filed in response to Kranis' assertion there that Domino had not complied with Section 1312(a),[68] and (2) a letter from New York's Department of State dated October 2, 1997 stating that Domino had no application then on file for authority to do business in New York.[69] These materials do not raise a genuine issue of material fact.

■ The issue dispositive of the defense based on the door closing statute is whether Domino was doing business in New York at the time this action was commenced.[70] Even

**62.** N.Y.Bus.Corp.L. § 1312(a) (McKinney Supp. 1998).

**63.** *E.g., Oliver Promotions Ltd. v. Tams–Witmark Music Library, Inc.,* 535 F.Supp. 1224, 1228 (S.D.N.Y.1982); *Dixie Dinettes, Inc. v. Schaller's Furniture, Inc.,* 71 Misc.2d 102, 103, 335 N.Y.S.2d 632, 635 (Civ.Ct. Kings Co.1972); *see also Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.,* 929 F.2d 343, 346 (7th Cir.1991) (lack of capacity affirmative defense); *Aini v. Sun Taiyang Co.,* 978 F.Supp. 533, 539 n. 31 (S.D.N.Y.1997); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d §§ 1294–95 (1990).

**64.** Answer, *passim.* The assertion that Domino lacks capacity to sue is based explicitly on the Colorado dissolution statute, *id* . ¶¶ 44–48, 52, which does not require pleading or proof that Domino was doing business in New York at the time this action was commenced. The only reference to New York law in connection with the lack of capacity defense is the assertion that

allowing Domino to proceed here would violate the public policy of New York with respect to the maintenance of actions by involuntarily dissolved corporations. *Id.* ¶ 52.

**65.** *E.g., Wagner,* 929 F.2d at 346; *Aini,* 978 F.Supp. at 539 n. 31; 5 Wright & Miller §§ 1295; *see* Fed.R.Civ.P. 9(a).

**66.** *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996). *Accord, e.g., FDIC v. Giammettei,* 34 F.3d 51, 54–55 (2d Cir.1994).

**67.** Misdenominated as Rule 3(g) statements.

**68.** Genovese Aff. Ex. 32.

**69.** Genovese Aff. Ex. 33.

**70.** To violate Section 1312(a), defendants must show not only that Domino is doing business in New York, but also that the business is wholly

if the affidavit from the state court action raised an issue as to whether Domino was doing business here when it was executed, it was executed well before this action was commenced. And it does not even do that. The relevant portion of the affidavit states only that the court "should allow plaintiff the opportunity to cure *any alleged defect*" and that Domino had retained an Albany firm "to assist in filing the necessary application." [71] Thus, the only fair reading of the evidence is that Domino asked for a chance to correct any Section 1312(a) defect, if the court found that there was one. Because Domino included the word "alleged" in conjunction with "defect," no reasonable juror could conclude that Domino admitted that it had failed to comply with Section 1312(a). Accordingly, even if defendants had not waived any defense based on the New York door closing statute, they have failed to raise a genuine issue of material fact.

As the plaintiff has capacity to sue under Colorado law and as the defendants have failed to demonstrate that the plaintiff was doing business in New York in derogation of N.Y.Bus.Corp.L. § 1312(a), the Court turns now to the merits of plaintiff's claim.

*Fraudulent Conveyance*

The statute relevant to the fraudulent conveyances is Section 273–a of the New York Debtor and Creditor Law, which provides in relevant part that:

> "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if,

after final judgment for the plaintiff, the defendant fails to satisfy the judgment." [72]

It is undisputed that Domino commenced an action against Kranis for money damages on August 13, 1991,[73] that judgment was entered against Richard Kranis in the amount of $1,764,212.61 in March 1996,[74] and that the judgment remains unsatisfied beyond the $12,913.71 which Kranis has paid to Domino.[75] Domino has demonstrated also that on December 19, 1991, while that action was pending, Richard Kranis transferred his interests in the West 87th Street and Roslyn Heights properties to his wife, defendant Ann Kranis, each for "ten dollars and other good and valuable consideration." [76]

The defendants resist summary judgment only on the grounds that (1) there was fair consideration for the conveyance of the West 87th Street property because Ann Kranis over the years provided money for the building's purchase and upkeep, and (2) the underlying malpractice judgment was invalid because it was procured by fraud on the state court and was unjust in light of Domino's recovery from the construction companies.

*Fairness of Consideration*

The defendants do not dispute that the two transfers were made without contemporaneous consideration.[77] Instead, Ann Kranis in her reply declaration asserts that money for the down payment, upkeep and renovation of the properties came from her uncle or from her own funds but that title on the West 87th Street property was never put in her name because she was not a citizen and was worried that such would affect the chances of

intrastate. *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 33, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *In re Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp.,* 550 F.2d 1320, 1326 (2d Cir. 1977) ("Allenberg stands for the proposition that a state 'door closing' statute may not impeded a diversity action concerning interstate or foreign commerce....").

**71.** Genovese Aff. Ex. 32 at ¶ 24 (emphasis added).

**72.** N.Y. Debt. & Cred. L. § 273–a (McKinney 1990).

**73.** Mallin Aff. Ex. G.

**74.** Mallin Aff. Ex. P.

**75.** Domino Local Rule 3(g) Stmt. ¶ 3; Richard Kranis Rule 3(g) Counter–Stmt.; Ann Kranis Rule 3(g) Stmt. in Opp.

**76.** Mallin Aff. Exs. I, J.

**77.** Domino 3(g) Stmt. ¶¶ 5, 7; Richard Kranis Opp. 3(g) Stmt.; Ann Kranis Opp. 3(g) Stmt.

receiving a FHA mortgage.[78] After she and her husband had jointly owned the Roslyn Heights property for twenty years and Richard Kranis had held title to the West 87th Street property for over thirty years, Ann Kranis contends that she requested that title to the two properties to be placed in her name in 1991 because she planned to relocate to Israel.[79] Ann Kranis' conclusory assertions are inadequate to avoid summary judgment.

■ First, Ann Kranis failed to dispute plaintiff's contention in its Rule 56.1 statement that the transfers were made without fair consideration.[80] The failure to do so resulted in the facts alleged being deemed established for purposes of this motion.[81]

■ Second, Ann Kranis first put forward her factual allegations regarding consideration in her reply declaration in support of her own cross-motion for summary judgment. New arguments first raised in reply papers in *support* of a motion will not be considered.[82] A fortiori, new arguments raised even later will not be entertained.

■ Finally, even if each of these defects are overlooked, Ann Kranis' proffer is legally insufficient to raise a genuine issue of material fact. The New York Debtor and Creditor Law provides in relevant part that "[f]air consideration is given for property, or obligation, [w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied."[83] In an intrafamily transfer such as this one, the burden of demonstrating the fairness of consideration is on the transferee.[84] Thus, in order to avoid summary judgment on the theory that· an antecedent debt constituted fair consideration for the transfers, Ann Kranis must come forward with sufficient evidence to raise a triable issue of fact as to the existence and amount of the antecedent debt. That she has not done.

*Merman v. Miller*[85] is precisely on point. In that case, a husband transferred to his wife his interest in their home while a negligence action was pending against him. The judgment creditor later sought to set aside the conveyance as fraudulent and moved for summary judgment. In opposition, the transferee wife claimed, solely through a conclusory affidavit, that her husband's interest in the house was transferred in satisfaction of his obligation to her for alimony and child support. The court found the wife's affidavit

---

78. Ann Kranis Decl. ¶ 4–11.

79. *Id.* at ¶ 12.

80. A. Kranis Opp. 3(g) Stmt.

81. *See* Local Rule 56.1(c) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also, United States v. All Right, Title and Interest in Real Property*, 77 F.3d 648, 657 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996); *Watson v. McGinnis*, 981 F.Supp. 815, 816 (S.D.N.Y.1997); *Sea–Land Service, Inc., v. Citihope Int'l, Inc.*, 176 F.R.D. 118, 122 (S.D.N.Y.1997).

82. *See Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997), *aff'd.* 1998 WL 398795, Nos. 97–9208(L), 97–9242(XAP) (2d Cir. June 9, 1998); *Pyramyd Stone Int'l v. Crosman Corp.*, 95 Civ. 6665, 1997 WL 66778, at *17–18 n. 3 (S.D.N.Y.1997) (Keenan, J.); *Cumis Ins. Soc'y v. Citibank*, 921 F.Supp. 1100, 1110 n. 7 (S.D.N.Y.1996) (Koeltl, J.): *Chase Manhattan Bank v. T & N plc*, 905 F.Supp. 107, 122 n. 5 (S.D.N.Y.1995) (Koeltl, J.); *Sigmon*

*v. Parker, Chapin, Flattau & Klimpl*, 901 F.Supp. 667, 677 n. 5 (S.D.N.Y.1995) (Leisure, J.) (citing cases); *see also Keefe v. Shalala*, 71 F.3d 1060, 1066 n. 2 (2d Cir.1995); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir.1993); *NLRB v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n. 3 (2d Cir. 1988) (all holding that issue first raised in appellate reply brief need not be considered by appellate court).

83. N.Y. Debtor & Cred. L. § 272(a) (McKinney 1990)

84. *Interpool Ltd. v. Patterson*, 890 F.Supp. 259, 265 (S.D.N.Y.1995) ("In intrafamily cases such as this, [New York] place[s] the burden of proving 'fair consideration' or 'reasonable equivalence' on the defendant."); *ACLI Gov't Securities, Inc. v. Rhoades*, 653 F.Supp. 1388, 1391 (S.D.N.Y.1987), *aff'd without opinion*, 842 F.2d 1287 (2d Cir.1988) (table) ("in an intrafamily transaction there is a heavier burden on the transferee to establish fair consideration for the transfer"); *Orbach v. Pappa*, 482 F.Supp. 117, 118 (S.D.N.Y.1979).

85. 82 A.D.2d 826, 439 N.Y.S.2d 428 (2d Dept. 1981).

insufficient to create a genuine issue of fact. "In order to defeat the plaintiff's motion for summary judgment, the defendants were obligated to disclose evidentiary facts sufficient to raise triable fact issues and not merely to recite conclusions of fact or law." [86] Fatal to the defendants' effort to defeat summary judgment was their complete failure to disclose the value of the husband's share in the property or the nature and amount of the wife's alleged claim for alimony or child support.[87]

Ann Kranis similarly submitted no evidence of the alleged antecedent debt owed by her husband to her other than a conclusory reply declaration. She offered no proof of her contributions to the purchase, upkeep or renovation of the properties. She offered no evidence that the West 87th Street property was in her husband's name solely because of concern for the mortgage. She offered no support for her claim that the transfers were made in 1991 because she planned to relocate to Israel then. In short, "[t]he evidence here was not sufficient to establish the existence of *any* antecedent debt, let alone a debt proportionate to" Richard Kranis' interests in the properties.[88]

As Ann Kranis has failed to establish even the existence of any antecedent owed her by her husband, the Court need not consider whether any such debt constituted "fair exchange" for the properties or whether the transfers were made in good faith.[89] Coupled with her failure to deny that the transfers were made without fair consideration, Ann Kranis' proffer is legally insufficient to defeat summary judgment.

*Other Defenses*

The Kranises raise two other defenses to the fraudulent conveyance claims: (1) the underlying malpractice judgment was procured through fraud in the state court in that Domino erroneously claimed to have suffered the damages rather than its subsidiary, Media Sound, and (2) the plaintiff is not entitled to recover because it already has satisfied its judgment through its settlement with the construction companies. Domino counters that both of these defenses were raised and litigated in the state court action and therefore are barred by collateral estoppel.

▮▮▮ To begin with, the defenses of fraud at the trial or "double recovery" may not be asserted to attack a New York judgment collaterally. New York courts permit collateral attack on a judgment only upon a showing that the court did not have jurisdiction over the parties or subject matter.[90] Collateral attack on the grounds of fraud must demonstrate "fraud in the very means by which the judgment was procured," [91] not merely perjury in the trial giving rise to the

---

**86.** 82 A.D.2d at 827, 439 N.Y.S.2d at 429.

**87.** *Id. Accord, Community Nat'l Bank & Trust Co. of N.Y. v. Statile* 94 A.D.2d 754, 462 N.Y.S.2d 693 (2d Dept.1983). In *Community National Bank,* a judgment debtor and his wife transferred property to his sister and argued that he had held the property in trust for his sister for the preceding eleven years. The debtor, wife and sister each submitted affidavits attesting that the sister had paid the down payment, every mortgage payment, real estate tax and insurance payments on the house over the eleven years, but had not put title to the house in her name because she was a waitress and feared that she would not be able to get a mortgage. In addition to the affidavits, the parties offered canceled checks evidencing the sister's payments over the years. The Appellate Division held that such was insufficient to defeat summary judgment. The court found also that the delay of eleven years between the purchase of the home and the transfer to the sister coupled with the proximity of the transfer to time of the litigation against the brother rendered the conveyance "highly suspect." *Id.*

**88.** *ACLI Gov't Securities, Inc.,* 653 F.Supp. at 1391 (emphasis in original); *see also Duckstein v. Rosa,* 118 A.D.2d 951, 952, 499 N.Y.S.2d 515, 516 (3d Dept.1986) ("Defendants further contention, that [the wife] made many of the mortgage payments on the premises and, consequently, that the conveyances were in satisfaction of an antecedent debt, is not supported by evidence in the record.").

**89.** *See Interpool,* 890 F.Supp. at 268 ("Under Section 272 of the Debtor and Creditor Law, moreover, a conveyance is made for 'fair consideration' only if a fair equivalent was received and it was made in good faith.").

**90.** *See, e.g., Bell v. Town Bd. of Town of Pawling,* 146 A.D.2d 729, 730, 537 N.Y.S.2d 214, 215 (2d Dept.1989).

**91.** *Id.*

judgment.[92] Defendants contentions would fail, however, even if they were legally sufficient bases for attacking the judgment.

 Under New York law,[93] collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same."[94] Those in privity "include[ ] those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action."[95]

 Richard Kranis is collaterally estopped from now asserting a defense of fraud at the inquest on the grounds that Domino suffered no loss. He moved to dismiss the state court action on the ground that Media Sound, and not Domino, suffered the business loss, but Justice Shainswit denied the motion, finding his argument meritless.[96] He raised these same arguments again on appeal, and the Appellate Division also rejected them on the merits.[97] Finally, Kranis apparently renewed his contention that Domino suffered no damages in his motion to set aside the judgment and the argument was

rejected yet again.[98] As Kranis has had a full and fair opportunity to litigate the issue of Domino's "fraud" on the state court—Domino's contention that it had suffered damages—and as the defense has been decided against him, he is collaterally estopped from raising that defense anew in the instant action.

 Kranis is barred also from raising the defense of "double recovery." As with his contention that Domino suffered no loss, Kranis already has litigated this issue in the state courts, and it was actually and necessarily decided against him. In his decision of March 17, 1997 on Kranis' motion to set aside the judgment, the late Justice Friedman reached the merits of the double recovery contention and found that "[p]atently plaintiff has been damaged far in excess of the combination of the payments from the other defendants and the judgment, almost totally unpaid, against defendants."[99] As the claim was decided against Kranis, he is estopped from reasserting that argument here.

 Ann Kranis likewise is collaterally estopped from now asserting either of these defenses in this action. Although she was not a party to the previous state court action against her husband for malpractice, she was in privity with him.[100] It is well

**92.** *Arcuri v. Arcuri,* 265 N.Y. 358, 193 N.E. 174 (1934) ("we cannot assent to the proposition that ... the perjury practiced by the plaintiff on that trial constitutes fraud on the court of such a nature as to allow in this action a collateral attack upon that judgment."); *see also* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4415 (1981) ("Mere presentation of false evidence ... does not generally warrant relief [through collateral estoppel].").

**93.** Because the judgment relied upon is a state court judgment, its effect must be determined in ·accordance with state law. *E.g.,* 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

**94.** *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984).

**95.** *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2d Cir.1995) *(quoting Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 320, 265 N.E.2d 739 (1995)).

**96.** Mallin Aff. Ex. O.

**97.** Mallin Aff. Exs. Q, R.

**98.** Mallin Aff. Ex. T.

**99.** Mallin Aff. Ex. T. Justice Friedman based his ruling on Justice Shainswit's having heard testimony that the damages were in excess of $14 million. Justice Shainswit, however, held only that Domino had "established business interruption losses exceeding tile policy limit of $1,250,-000" and therefore awarded the $1.25 million insurance policy limit. *Id.* Ex. O, at 3. Justice Friedman's conclusion therefore would be correct only if the loss exceeded $2.6 million—and no trier of fact yet has so concluded. Nevertheless, that was a matter for the Appellate Division, which not· only rejected Kranis' argument, but sanctioned him on the ground that the appeal was frivolous. Mallin Reply Aff. Ex. B.

**100.** Not only was Ann Kranis "virtually represented" by her husband, it appears that she also was a party in earlier efforts to enforce the judgment against her husband. She apparently

settled that a judgment may bar a subsequent claim by a person who was not a party to the original litigation where the non-party's interests were adequately represented by the party to the prior action such that the party was the "virtual representative" of the non-party.[101] Because Ann Kranis' interests in challenging the judgment in the malpractice action derive exclusively from her husband, "the interests at stake could not be more closely aligned."[102] Richard Kranis' interests in defending against the malpractice action were identical to his wife's interest in now asserting that malpractice judgment was obtained by fraud and that it constitutes "double recovery." Consequently, she is barred from re-challenging that judgment now on the same grounds that her husband litigated in the prior proceedings.

### Conclusion

On consent of the parties, the parallel action transferred from the Eastern New York and now denominated No. 98 Civ. 3767 is consolidated with this action.[103]

 Plaintiff's motion to transfer the Eastern District of New York action, for summary judgment, and for other relief is granted to the extent that the conveyances of the properties at West 87th Street and in Roslyn Heights are canceled and set aside and is denied in all other respects.[104]

The Court concludes, moreover, that there is no just reason to delay entry of a final judgment as to the fraudulent conveyances of the two properties. FED.R.CIV.P. 54(b) permits a district court to direct entry of final judgment as to claims which are separable from and independent of other unresolved claims "where there exists 'some danger of hardship or injustice through delay. . . .' "[105] Defendant Richard Kranis, a now disbarred New York attorney, has been stalling the enforcement of the legal malpractice judgment entered against him for several years through both repetitive and sanctionable legal maneuvers and through the conveyances of his interests in property which form the basis of the instant suit. The Court finds that it would be manifestly unjust to permit the defendants to further impede the progress of justice through similar delays on the remaining claim, since that would serve only to postpone the ultimate enforcement of Domino's judgment. As the remaining claim to set aside as fraudulent Kranis' savings account withdrawals is factually independent of the conveyances already disposed of herein, the Court finds that entry of a final judgment on the real estate conveyances is consistent with sound judicial administration and would prevent an unjust delay of the execution of Domino's judgment. The Clerk is directed to enter final judgment for plaintiff on the first cause of action in each complaint.

SO ORDERED.

---

brought an action against Domino's attorneys, the firm of Weg and Meyers, P.C., for filing an improper restraining notice on her bank account and another house in her name in Roslyn Heights. Mallin Reply Aff. Ex. C. Her complaint was dismissed on the grounds that Justice Friedman's opinion had already decided that the restraints were proper. *Id.* Ex. D.

**101.** *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d at 345.

**102.** *Eubanks v. F.D.I.C.,* 977 F.2d 166, 170 (5th Cir.1992) (finding wife to be barred by res judicata from asserting claims raised by her husband in prior action where her claims derive exclusively from her husband's).

**103.** Apr. 17, 1998 Stip. & Order, No. 98 Civ. 3767.

**104.** Plaintiff's motion to transfer is rendered moot by the transfer of the parallel case from the Eastern District of New York on the consent of the parties. The plaintiff's motion for attorneys' fees is denied on the grounds that N.Y. DEBT & CRED L. § 276–a requires demonstration of actual intent to defraud and this Court's finding that the conveyances of property are fraudulent rests on its finding of fraud implied by law rather than actual fraud. As the plaintiff has failed to demonstrate the absence of any genuine issue of material fact regarding the defendants' actual intent to defraud, an award of attorneys' fees would be inappropriate at this time.

**105.** *L.B. Foster v. America Piles, Inc.,* 138 F.3d 81, 86 (2d Cir.1998) (quoting *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 183 (2d Cir.1978)).